RECEIVED

MAY 30 2017

SUPERIOR COURT OF NEW JERSEY
COUNTY OF BERGEN
FINANCE DIVISION

**Law Office of Robert A. Tandy, LLC**
Mack-Cali Corporate Center
50 Tice Boulevard, Suite 363
Woodcliff Lake, New Jersey 07677
(201) 474-7103
(201) 474-7101 (facsimile)
Attorney for Plaintiff, Witold Baginski
ATTORNEY ID # 028031999

| | |
|---|---|
| WITOLD BAGINSKI<br><br>Plaintiff,<br><br>vs.<br><br>BOROUGH OF WALLINGTON; EUGENIUSZ RACHELSKI, individually and in his official capacity as Councilman; KHALDOUN ANDROWIS, individually and in his official capacity as Councilman; MELISSA DABAL, individually and in his official capacity as Councilwoman; BRYAN OLKOWSKI, individually and in his official capacity as Councilman; XYZ CORP. INC. (1-10); JOHN DOES (1-10) and JANE DOES (1-10)<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br><br>Docket No.: BER-L-**3775-17**<br><br>CIVIL ACTION<br><br>**COMPLAINT IN LIEU OF PREROGATIVE WRIT & JURY DEMAND** |

Plaintiff, Witold Baginski ("Plaintiff"), by his attorneys, the Law Office of Robert A. Tandy, LLC., by way of Complaint against the Defendants, BOROUGH OF WALLINGTON; EUGENIUSZ RACHELSKI, individually and in his official capacity as Councilman; KHALDOUN ANDROWIS, individually and in his official capacity as Councilman; MELISSA DABAL, individually and in his official capacity as Councilwoman; BRYAN OLKOWSKI, individually and in his official capacity as Councilman; XYZ CORP. INC. (1-10); JOHN DOES (1-10) and JANE DOES (1-10), alleges as follows:

SUPERIOR COURT BERGEN COUNTY

FILED

MAY 30 2017

*Laura A. Swallow*
DEPUTY CLERK

-1-

## NATURE OF ACTION AND VENUE

1.      This is an action pursuant to i) the New Jersey Conscientious Employee Protection Act ("CEPA"), *N.J.S.A.* 34:19-1 *et seq.*, to remedy unlawful retaliation; ii) *N.J.S.A.* 40A:9-165; iii) the Civil Rights Act, 42 *U.S.C.* Sections 1981 *et seq.*, 1983 *et seq.*, and 1985 *et seq.*; and the New Jersey Civil Rights Act, *N.J.S.A.* 10:6-1, *et seq.*

2.      Venue lies in the County of Bergen pursuant to R. 4:3-2 (a).

3.      Plaintiff, a tenured Borough Clerk for the Borough of Wallington, is an employee of Defendant, Borough of Wallington within the meaning of CEPA *N.J.S.A.* 34:19-2(b).

4.      Defendant, the BOROUGH OF WALLINGTON (the "Borough"), is a municipal corporation of the State of New Jersey, organized under the Borough form of government and is Plaintiff's "employer" within the meaning of CEPA, *N.J.S.A.* 34:19-2(a).

5.      Defendant, EUGENIUSZ RACHELSKI is a duly elected Councilman in the Borough of Wallington.

6.      KHALDOUN ANDROWIS is a duly elected Councilman in the Borough of Wallington.

7.      MELISSA DABAL is a duly elected Councilwoman in the Borough of Wallington.

8.      BRYAN OLKOWSKI is a duly appointed Councilman in the Borough of Wallington.

9.      Defendants XYZ CORP. INC. (1-10); JOHN DOES (1-10) and JANE DOES (1-10) are fictitious parties charged with the responsibility of supervising Plaintiff's employment with Defendant Borough of Wallington.

-2-

## STATEMENT OF FACTS

10.     On or about March 25, 1999, the Mayor and Council for the Borough adop Resolution No. 99-41 appointing Plaintiff to become the Borough Clerk for the Borou effective April 1, 1999.

11.     *N.J.S.A. 40A:9-133(a)* provides in part "In every municipality there shall be municipal clerk appointed for a three-year term by the governing body of the municipality."

12.     Plaintiff was appointed Borough Clerk for a three (3) year term ending March 31 2002.

13.     Plaintiff's duties as Borough Clerk include(ed), but were not limited to, (1) acting as secretary of the municipal corporation and custodian of the municipal seal and of all minutes, books, deeds, bonds, contracts, and archival records of the municipal corporation. The governing body may, however, provide by ordinance that any other specific officer shall have custody of any specific other class of record; (2) acting as secretary to the governing body, prepare meeting agendas at the discretion of the governing body, be present at all meetings of the governing body, keep a journal of the proceedings of every meeting, retain the original copies of all ordinances and resolutions, and record the minutes of every meeting; (3) serving as the chief administrative officer in all elections held in the municipality, subject to the requirements of Title 19 of the Revised Statutes; (4) serving as chief registrar of voters in the municipality, subject to the requirements of Title 19 of the Revised Statues; (5) serving as the administrative officer responsible for the acceptance of applications for licenses and permits and the issuance of licenses and permits, except where statute or municipal ordinance has delegated that responsibility to some other municipal officer; (6) serving as coordinator and records manager responsible for implementing local archives and records retention programs as mandated

pursuant to Title 47 of the Revised Statutes; (7) performing such other duties as imposed by statute, regulation or by municipal ordinance or regulation.

14.     On or about February 22, 2001, the Borough approved Ordinance No. 2001-3 creating and establishing the position of Administrator in and for the Borough of Wallington.

15.     On or about March 21, 2002, the Borough adopted Resolution No. 2002-44 that Plaintiff be reappointed Borough Clerk of the Borough for the prescribed term of office pursuant to *N.J.S.A. 4A:9-133*.

16.     On or about May 23, 2002, the then Mayor of the Borough recommended the appointment of Plaintiff as the first Administrator of the Borough of Wallington.

17.     On or about May 23, 2002, the then Mayor recommended a 25 gallon per week fuel allowance for Plaintiff relating to his employment with the Borough and was ratified by a vote of 6-0 by the Council.

18.     On or about January 4, 2004, the Borough adopted Resolution 2002-74 appointing Plaintiff as the Administrator for the Borough of Wallington at a salary of $1,000.00 per year.

19.     Plaintiff's duties as Borough Administrator were expressly provided in Ordinance No. 2001-3.

20.     On or about January 4, 2004, the Borough adopted Resolution 2004-26 appointing Plaintiff as the Administrator for the Borough of Wallington at a salary of $1,000.00 per year.

21.     On or about June 24, 2004, the Borough adopted Resolution No. 2004-74 giving Plaintiff a salary increase of $7,500.00.00 for his increased duties and responsibilities.

22.     Specifically, Resolution No. 2004-74 provided in part, "NOW, THEREFORE, BE IT ORDAINED, by the Borough Council of the Borough of Wallington, that the Borough

Clerk/Administrator is hereby given an increase in salary in the amount of $7,500.00 for increased duties and responsibilities from January 1, 2004 through December 31, 2004."

23.     Plaintiff's duties were expanded to include, but were not limited to, serving as Safe Drinking Water Coordinator; Stormwater Management Coordinator; Water Utility Coordinator and Assessment Search Officer.

24.     However, at no time did the Mayor and Council ever designate whether Plaintiffs was receiving the $7,500.00 increase in his capacity as Clerk or Administrator.

25.     On or about December 5, 2005, the Borough adopted Resolution No. 2005-115 whereby extending Resolution No 2004-74, the $7,500.00 salary increase, to remain in full force and effect; and, in addition to such salary increase, ordained that Plaintiff, as Borough Clerk/Administrator receive a stipend for any snow plowing and/or water/sewer emergencies at annual hourly rate.

26.     On or about August 20, 2007, the Borough adopted Resolution No. 2007-89 increasing the Plaintiff's annual salary as Administrator to $9,000.00.

27.     On or about April 19, 2012, the Borough adopted Ordinance 2012-10 fixing the salary, wages and compensation of certain officers, employees and servants of the Borough.

28.     Specifically, Ordinance 2012-10 set the (minimum – maximum) salary range for the Borough Clerk position as $45,000.00 - $95,000.00.

29.     Specifically, Ordinance 2012-10 set the (minimum – maximum) salary range for the Borough Administrator position as $1,000.00 - $10,000.00.

30.     On or about June 25, 2015, the Borough adopted Ordinance 2015-10 fixing the salary, wages and compensation of certain officers, employees and servants of the Borough.

31.     Specifically, Ordinance 2015-10 set the (minimum – maximum) salary range for the Borough Clerk position as $45,000.00 - $100,000.00.

32.     Specifically, Ordinance 2015-10 set the (minimum – maximum) salary range for the Borough Administrator position as $1,000.00 - $25,000.00.

33.     On or about October 27, 2016, the Borough adopted Resolution No. 2016-144 resolving in part that:

> **Section 1:** No official, employee, appointee or volunteer of the Borough of Wallington by whatever title known, or any entity that is in any way a part of the Borough shall engage, either directly or indirectly in any act including the failure to act that constitutes discrimination, harassment or a violation of any person's constitutional rights while such official, employee, appointee, volunteer, or entity is engaged in or acting  on behalf of the Borough's business or using facilities or property of the Borough.
>
> * * * * *
>
> **Section 3**: Discrimination, harassment and civil rights shall be defined for purposes of this resolution using the latest definitions contained in the applicable Federal and State laws concerning discrimination, harassment and civil rights.

34.     On or about October 27, 2016, the Borough adopted Resolution No. 2016-145 resolving in part that the Borough's personnel policies and procedures shall apply to all Borough of Wallington officials, appointees, employees, volunteers and independent contractors.

35.     The Borough of Wallington Employee Handbook provides in part:

**ANTI DISCRIMINATION POLICY:**

The Borough is committed to the principle of equal employment opportunity and anti-discrimination pursuant to Title VII of the 1964 Civil Rights Act as amended by the Equal Opportunity Act of 1972 and the New Jersey Law Against Discrimination (LAD). Under no circumstances will the Borough discriminate on the basis of …. Political status.

## GENERAL ANTI-HARASSMENT POLICY:

It is the Borough's policy to prohibit harassment of an employee by another employee....on the basis of actual or perceived...political status.

36.     On or about June 25, 2015, the Borough adopted Ordinance 2015-10 fixing the salary, wages and compensation of certain officers, employees and servants of the Borough.

37.     Specifically, Ordinance 2015-10 set the (minimum – maximum) salary range for the Borough Clerk position as $45,000.00 - $100,000.00.

38.     In or around 2017, Plaintiff was warned by two Borough of Wallington elected officials to "watch your back."

39.     In or around 2017, Plaintiff was warned by two Borough of Wallington elected officials that some of the "Republicans are coming after you."

40.     In or around 2016, Plaintiff was advised that he should tell his son, then Democratic Party Chairman in Wallington to stop speaking out against the Republicans.

41.     On or about March 24, 2017, Plaintiff advised the Mayor and Council that he was being retaliated against based upon political association.

42.     Upon information and belief, the Borough failed to conduct any investigation into Plaintiff's complaints of political status discrimination, harassment and/or retaliation.

43.     On or about April 12, 2017, Defendant Rachelski caused an email to be transmitted directly to Plaintiff's subordinate, Agnes Brynczka, relating to setting items for the agenda.

44.     Pursuant to statute, Plaintiff, as Borough Clerk, shall be responsible for preparing meeting agendas.

45.     On or about April 19, 2017, Defendant Dabal transmitted an email communication to Plaintiff, mayor and remaining councilmembers relating to the Minutes from the Regular meeting dated March 30, 2017.

46.     On or about April 20, 2017, Plaintiff responded to Defendant Dabal in part "I am in receipt of your email dated April 19, 2017, related to your proposed changes to the meeting minutes of the Mayor and Council meeting of March 30, 2017.  Please be advised, that I cannot make your proposed substantive changes as I do not believe them to be accurate account of what occurred at the meeting. Although I do not take verbatim minutes, I do not believe your proposed substantive changes are true and accurate.  Thus, I refuse to make changes for adoption as I believe this would be a falsification of a public record."

47.     On or about April 25, 2017, approximately five (5) days after Plaintiff refused to make changes to the Meeting Minutes for what he reasonably believed to be a violation of the law, the Borough Attorney caused a "Rice" Notice to be delivered and served upon Plaintiff notifying him that on May 1, 2017, the Mayor and Council planned to discuss the possible termination of his employment as Borough Administrator and the elimination or modification of his right to fill his car with gasoline at the depot owned and/or operated by the City of Lodi.

48.     On or about May 1, 2017, by a vote of 4-2, the named individual Defendants, being the 4 in the majority, voted to remove Plaintiff from his position of Administrator of the Borough of Wallington and to eliminate and terminate the usage of gas as Plaintiff had been allowed to do since 2002.

49.     On or about May 1, 2017, by a vote of 4-2, the named individual Defendants, being the 4 in the majority, voted to appoint Jane Fontana to be the Administrator effective June

1, 2017 at a salary of $45,000.00 per year, a **125% salary increase** from Plaintiff's salary as Administrator.

50.     Upon information and belief, on or about May 3, 2017, Defendant Rachelski caused an email communication to be transmitted to Defendants Androwis, Dabal and Olkowski having a subject line "Just getting started" expressly providing "**We got rid of the big fish, now we need to start working on the others…**"

51.     On or about May 5, 2017, the Borough Attorney caused a "Rice" Notice to be delivered and served upon Plaintiff notifying him that on May 15, 2017, the Mayor and Council planned to discuss the possible termination of his employment as managing or overseeing the Wallington Department of Public Works, something erroneously entitled "Lien Assessment Officer" and his position relating to the Mandatory Source Separation and Recycling Act.

52.     On or about May 17, 2017, the Borough Attorney caused a "Rice" Notice to be delivered and served upon Plaintiff notifying him that on May 18, 2017, the Mayor and Council planned to discuss the possible termination of his employment as managing or overseeing the Wallington Department of Public Works, something erroneously entitled "Lien Assessment Officer" and his position relating to the Mandatory Source Separation and Recycling Act.

53.     On or about May 18, 2017, Plaintiff advised the Mayor and Council that they failed to provide adequate Rice notice under the law and their actions constituted further retaliation for engaging in protected activity under the law.

54.     To date, Defendants have failed to conduct any investigation into his complaints of retaliation as expressly provided in his May 18, 2017 correspondence.

55.     On or about May 18, 2017, the Mayor and Council did not discuss Plaintiff's employment as they recognized they were in violation of his rights under the law, but did, in fact,

introduce Ordinance No. 2017-5 for first reading entitled "An Ordinance to Amend and Supplement an Ordinance Fixing the Salary, Wages and Compensation of Certain Officer, Employees and Servants of the Borough of Wallington, County of Bergen< State of New Jersey."

56.     The introduced Ordinance seeks to increase the maximum salary for the position of Borough Administrator from $25,000.00, when Plaintiff served in the capacity as Administrator, to $65,000.00 now, representing a **160% salary increase** from the maximum salary when Plaintiff served in the capacity as Administrator.

57.     The introduced Ordinance also seeks to increase the maximum salary range for all, each and every officer and employee in the Borough except Plaintiff, as Borough Clerk, in direct violation of *N.J.S.A. 40A:9-165* and direct contravention of the stated purpose of the statute, i.e., to eradicate economic discrimination on the basis of politically motivated retaliation.

58.     On or about May 22, 2017, the Borough Attorney caused a "Rice" Notice to be delivered and served upon Plaintiff notifying him that on June 5, 2017, the Mayor and Council planned to discuss the possible termination of his employment as managing or overseeing the Wallington Department of Public Works, something erroneously entitled "Lien Assessment Officer."

59.     Although Plaintiff is currently receiving the $7,500.00 salary increase, Defendants seek to reduce his salary by $7,500.00.

60.     *N.J.S.A. 40A:9-165* provides in part:

> The governing body of a municipality, by ordinance, unless otherwise provided by law, shall fix and determine the salaries, wages or compensation to be paid to the officers and employees of the municipality, including the members of the governing body and the mayor or other chief executive, who by law are entitled to salaries, wages, or compensation.

Salaries, wages or compensation fixed and determined by ordinance may, from time to time, be increased, decreased or altered by ordinance. **No such ordinance shall reduce the salary of, or deny without good cause an increase in salary given to all other municipal officers and employees to, any tax assessor, chief financial officer, tax collector or municipal clerk during the term for which he shall have been appointed.**

61.     The legislative purpose in enacting *N.J.S.A. 40A:9-165* was to protect the four named Officers, including Borough Clerk, from economic discrimination regardless of whether or not it is politically motivated.

62.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer substantial loss of income and other pecuniary harm; diminishment of career opportunity; loss of self-esteem; disruption of his family life; emotional trauma and distress; physical manifestations of pain and suffering and other irreparable harm.

## COUNT ONE

### (Conscientious Employee Protection Act)

63.     Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 62 of the Complaint as if set forth at length herein.

64.     Defendants engaged in the aforementioned acts of continuous and repeated retaliation against Plaintiff after Plaintiff complained about what Plaintiff believed to be violations of the law engaged in by Defendants.

65.     Defendants, EUGENIUSZ RACHELSKI; KHALDOUN ANDROWIS; MELISSA DABAL; and BRYAN OLKOWSKI engaged in the above-described retaliatory and discriminatory conduct while acting on behalf of the Borough.

66.     Defendants, EUGENIUSZ RACHELSKI; KHALDOUN ANDROWIS; MELISSA DABAL; and BRYAN OLKOWSKI, individually aided, abetted, incited, compelled and/or coerced the performance of the above unlawful employment practices within the meaning of CEPA.

67.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer substantial loss of income and other pecuniary harm; diminishment of career opportunity; loss of self-esteem; disruption of his family life; emotional trauma and distress; physical manifestations of pain and suffering and other irreparable harm.

**WHEREFORE**, Plaintiff, Witold Baginski, prays for judgment against Defendants, jointly and severally, as follows:

A.     For money damages for all economic losses including, but not limited to, lost, past and future salary and fringe benefits;

B.     For compensatory damages;

C.     For punitive damages;

D.     For emotional distress damages;

E.     For physical manifestations of pain and suffering;

F.     For attorneys' fees and costs of this action;

G.     For interest at the maximum legal rate on all sums awarded;

H.     For Consequential damages; and

I.     For such other and further relief as the Court deems just and proper.

-12-

## COUNT TWO

### (42 U.S.C. Section 1981 and 1983 *et seq.*)

68.     Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 67 of the Complaint as if set forth at length herein.

69.     The foregoing actions of Defendants, acting under the color of law, subjected Plaintiff to the deprivation of his constitutional rights of freedom of speech and freedom of association in violation of 42 U.S.C. Section 1981 and 1983.

70.     Defendants, EUGENIUSZ RACHELSKI; KHALDOUN ANDROWIS; MELISSA DABAL; and BRYAN OLKOWSKI are persons who, while acting under color of law, were performing their duties, whether in compliance with federal and/or state laws, or contrary to the same, or within their exercise of professional discretion and have, as a result of their actions, caused discrimination, harassment and retaliation against Plaintiff in performing their duties and responsibilities as Councilmembers.

71.     As a result of Plaintiff engaging in the protected activities of freedom of speech and freedom of association as secured by, *inter alia,* the First Amendment and the Fourteenth Amendment of the United States Constitution, Plaintiff has suffered and continues to suffer irreparable damages by the actions of these Defendants.

72.     Plaintiff's constitutionally protected activities, as previously alleged herein, were/are the motivating factor for Defendants repeated and continuous retaliatory conduct that continue to the day of the filing of the Complaint.

73.     Through Defendants' repeated illegal acts, Plaintiff's exercise and enjoyment of these rights and privileges have been interfered with or attempted to be interfered with by threats, intimidation, harassment, or coercion by persons acting under the color of law.

-13-

74.    Defendants' conduct were taken pursuant to an official and extant policy and practice of Defendants, and were taken by individuals with final policymaking authority over such actions.

75.    Defendants intentionally, willfully and recklessly discriminated, retaliated and harassed Plaintiff, and have repeatedly and continuously done so to the date of the within complaint, whereby depriving Plaintiff of his rights secured and guaranteed by federal and State law.

76.    The foregoing actions were knowing, willful and deliberate violations of law and deprivations of Plaintiff's civil rights, and Plaintiff is therefore entitled to punitive damages under applicable law.

77.    As a direct and proximate result of Defendants' illegal and wrongful actions, described herein, Plaintiff has suffered and continues to suffer economic, non-economic, and emotional distress damages, physical manifestations of pain and suffering, anxiety, ridicule, embarrassment, public humiliation, loss of compensation, loss of earnings, loss of standing in the community, legal expenses, and other irreparable harm and expenses as a result of defendants' actions.

**WHEREFORE**, Plaintiff, Witold Baginski, prays for judgment against Defendants, jointly and severally, as follows:

A.    For money damages for all economic losses including, but not limited to, lost, past and future salary and fringe benefits;

B.    For compensatory damages;

C.    For punitive damages;

D.    For emotional distress damages;

E.    For physical manifestations of pain and suffering;

F.    For attorneys' fees and costs of this action;

G.    For interest at the maximum legal rate on all sums awarded;

H.    For Consequential damages; and

I.    For such other and further relief as the Court deems just and proper.

## COUNT THREE

### (New Jersey Civil Rights Act, *N.J.S.A. 10:6-1 et seq*)

78.    Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 77 of the Complaint as if set forth at length herein.

79.    Defendants' actions are in violation of the New Jersey Civil Rights Act, *N.J.S.A. 10:6-1 et seq*.

80.    Defendants' collective conduct as alleged herein violate Plaintiffs' rights to freedom of speech, freedom of association, in violation of the New Jersey State Constitution of 1947, including Article I.

81.    Defendants, EUGENIUSZ RACHELSKI; KHALDOUN ANDROWIS; MELISSA DABAL; and BRYAN OLKOWSKI are persons who, while acting under color of law, were performing their duties, whether in compliance with federal and/or state laws, or contrary to the same, or within their exercise of professional discretion and have, as a result of their actions, caused discrimination, harassment and retaliation against Plaintiff in performing their duties and responsibilities as Councilmembers.

82.    As a result of Plaintiff engaging in the protected activities of freedom of speech and freedom of association as secured by, *inter alia*, the First Amendment and the Fourteenth Amendment of the United States Constitution, Plaintiff has suffered and

continues to suffer irreparable damages by the actions of these Defendants.

83.    Plaintiff's constitutionally protected activities, as previously alleged herein, were/are the motivating factor for Defendants repeated and continuous retaliatory conduct that continue to the day of the filing of the Complaint.

84.    Through Defendants' repeated illegal acts, Plaintiffs exercise and enjoyment of these rights and privileges have been interfered with or attempted to be interfered with by threats, intimidation, harassment, or coercion by persons acting under the color of law.

85.    Defendants' conduct were taken pursuant to an official and extant policy and practice of Defendants, and were taken by individuals with final policymaking authority over such actions.

86.    Defendants intentionally, willfully and recklessly discriminated, retaliated t and harassed Plaintiff, and have repeatedly and continuously done so to the date of the within complaint, whereby depriving Plaintiff of his rights secured and guaranteed by federal and State law.

87.    The foregoing actions were knowing, willful and deliberate violations of law and deprivations of Plaintiff's civil rights, and Plaintiff is therefore entitled to punitive damages under applicable law.

88.    As a direct and proximate result of Defendants' illegal and wrongful actions, described herein, Plaintiff has suffered and continues to suffer economic, non-economic, and emotional distress damages, physical manifestations of pain and suffering, anxiety, ridicule, embarrassment, public humiliation, loss of compensation, loss of earnings, loss of standing in the community, legal expenses, and other irreparable harm and expenses as a

result of defendants' actions.

**WHEREFORE**, Plaintiff, Witold Baginski, prays for judgment against Defendants, jointly and severally, as follows:

A.   For money damages for all economic losses including, but not limited to, lost, past and future salary and fringe benefits;

B.   For compensatory damages;

C.   For punitive damages;

D.   For emotional distress damages;

E.   For physical manifestations of pain and suffering;

F.   For attorneys' fees and costs of this action;

G.   For interest at the maximum legal rate on all sums awarded;

H.   For Consequential damages; and

I.   For such other and further relief as the Court deems just and proper.

## COUNT FOUR

### (NJSA 40A:9-165)

89.   Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 88 of the Complaint as if set forth at length herein.

90.   As Borough Clerk, Plaintiff is entitled to certain statutory protections as contained in *N.J.S.A. 40A:9-165*.

91.   Defendants violated *N.J.S.A. 40A:9-165* by terminating the usage of gas as Plaintiff had been allowed to do since 2002.

92.   On or about May 18, 2017, Defendants introduced Ordinance 2017-5 at the first reading.

93.     Such Ordinance will discriminate against Plaintiff and will be a per se violation of the law; and such Ordinance was introduced purely as retaliation for Plaintiff engaging in protected activities.

94.     If such Ordinance is adopted at the second reading in June 2017, it will only cause this Plaintiff to make application to amend this Pleading as it too will constitute a violation of *N.J.S.A. 40A:9-165*.

95.     Although Plaintiff is currently receiving the $7,500.00 salary increase since 2004, Defendants seek to reduce his salary by $7,500.00 through eliminating other duties and responsibilities Plaintiff is performing in his role as Borough Clerk.

96.     If same $7,500.00 salary is eliminated as expected, it will only cause this Plaintiff to make application to amend this Pleading as it too will constitute a violation of *N.J.S.A. 40A:9-165*.

97.     As a direct and proximate result of Defendants' illegal and wrongful actions, described herein, Plaintiff has suffered and continues to suffer economic, non-economic, and emotional distress damages, physical manifestations of pain and suffering, anxiety, ridicule, embarrassment, public humiliation, loss of compensation, loss of earnings, loss of standing in the community, legal expenses, and other irreparable harm and expenses as a result of defendants' actions.

**WHEREFORE**, Plaintiff, Witold Baginski, prays for judgment against Defendants, jointly and severally, as follows:

A.     An Order declaring the action taken by the Mayor & Council eliminating Plaintiff's weekly gas usage allowance to be null and void and restoring the 25 gallon per week gas allowance;

B.      For money damages for all economic losses including, but not limited to, lost, past and future salary and fringe benefits;

C.      For compensatory damages;

D.      For punitive damages;

E.      For emotional distress damages;

F.      For physical manifestations of pain and suffering;

G.      For attorneys' fees and costs of this action;

H.      For interest at the maximum legal rate on all sums awarded;

I.      For Consequential damages; and

J.      For such other and further relief as the Court deems just and proper.

## COUNT FIVE

### (42 U.S.C. Section 1985 *et seq.*)

98.      Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 97 of the Complaint as if set forth at length herein.

99.      Defendants have entered into conspiracies with each other, at one time or another, to deprive Plaintiff, either directly or indirectly, of his privileges and immunities under the law, specifically Plaintiff's civil rights as guaranteed by the First and Fourteen Amendments of the United States Constitution.

100.     42 *USC* Section 1985 provides, in pertinent part: "If two or more persons in any state or territory conspire with the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the law, or of equal privileges or immunities under the laws...whereby another is injured . . .or deprived of having and exercising any right or privilege of a citizen of the United States, the party injured or

-19-

deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

101.   The illegal actions as described hereinabove by  Defendants constitute an infringement upon Plaintiff's rights as secured by the First and Fourteenth Amendments of the United States Constitution and provisions of the New Jersey Constitution, in violation of 42 U.S.C. 1985.

102.   The foregoing actions were taken by Defendants pursuant to an official and extant policy and practice of Defendants, and they were taken by individuals with final policymaking authority over such actions.

103.   The foregoing actions were knowing, willful, deliberate and represent a collaborative effort of the Defendants to violate the laws and deprive Plaintiff of his civil rights, and Plaintiff is therefore entitled to punitive damages under applicable law.

104.   Defendants have engaged in behavior that violates  Plaintiff's constitutional rights and have thereby irreparably injured Plaintiff.

105.   The foregoing actions were knowing, willful and deliberate violations of law and deprivations of Plaintiff's civil rights, and Plaintiff is therefore entitled to punitive damages under applicable law.

106.   As a direct and proximate result of Defendants' illegal and wrongful actions, described herein, Plaintiff has suffered and continues to suffer economic, non-economic, and emotional distress damages, physical manifestations of pain and suffering, anxiety, ridicule, embarrassment, public humiliation, loss of compensation, loss of earnings, loss of standing in the community, legal expenses, and other irreparable harm and expenses as a result of defendants' actions.

-20-

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Court Rule, R. 4:25-4, it is hereby asserted that Robert A. Tandy, Esq. is designated trial counsel for the trial of this action.

## DEMAND FOR TRIAL BY JURY

Plaintiff, Witold Baginski, herein demands a trial by jury on all issues.

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Pursuant to R. 4:10-2(b), demand is hereby made that you disclose and make a copy to the undersigned of any insurance agreements or policies applicable to this action.

LAW OFFICE OF ROBERT A. TANDY, LLC
Attorney for Plaintiff

ROBERT A. TANDY, ESQ.

Dated: May 25, 2017

## CERTIFICATION PURSUANT TO R.4:5-1 & 1:38-7(b)

I certify that the above matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration proceeding, and I have no knowledge that any other action or arbitration proceeding is contemplated.  To the best of my knowledge, no other party should be joined in this action.  I further certify that confidential personal identifiers have been redacted in accordance with Rule 1:38-7(b).

LAW OFFICE OF ROBERT A. TANDY, LLC
Attorney for Plaintiff

ROBERT A. TANDY, ESQ.

Dated: May 25, 2017

-21-