UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WITOLD BAGINSKI<br>    Plaintiff,<br>v.<br><br><br>BOROUGH OF WALLINGTON, et al.<br>        Defendants. | CIV. A. 2:17-cv-05320-CCC-JSA |

**MEMORANDUM OF LAW SUR-REPLY IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION FOR SANCTIONS**

                              Law Office of Robert A. Tandy, LLC
                              Robert A. Tandy, Esq (0387)
                              50 Tice Boulevard, Suite 250
                              Woodcliff Lake, New Jersey 07677
                              201-474-7103
                              201-474-7101 (facsimile)
                              Attorneys for Plaintiff

Of Counsel and on the brief,

Robert A Tandy, Esq.

**TABLE OF CONTENTS**

| | Page |
|---|---|
| TABLE OF CONTENTS | i |
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
| DEFENDANTS' SUR-REPLY BASED ON INAPPOSITE CASE LAW THAT ANALYZES LAW ENFORCEMENT'S QUALIFIED IMMUNITY IS IRRELEVANT AND SHOULLD BE DISREGARDED | 2 |
| CONCLUSION | 6 |

## TABLE OF AUTHORITIES

**CASES**                                                                                   Page

*Stengart v. Loving Care Agency, Inc.*, 201 N.J. 300 (2010)                                    3

*Walker v. Coffey*, 905 F.3d 138 (3d Cir. 2018)                                                3

**PRELIMINARY STATEMENT**

Defendants' sur-reply explains how Defendants hacked Plaintiff's e-mail account – by installing an Outlook program. This new information contained in Defendant's latest submission to the Court does not change the fact that Plaintiff never gave Defendants his personal email password in writing or verbally, as Defendants are forced to concede on pages 1-2 of their sur-reply brief.

Defendants also attempt to apply a Third Circuit case that makes no mention of the attorney-client privilege but that affirms a Pennsylvania District Court case granting qualified immunity to law enforcement. Defendants' argument concerning this wholly inapposite precedent fails as a matter of fact and law.

Finally, Plaintiff concedes that his Reply Certification contained a typographical error as to the email account at issue herein. Notwithstanding the typographical error, Plaintiff's initial moving brief in support of the within application and the actual emails unlawfully obtained, maintained, and produced by Defendants, as Defendants clearly know, all make reference to the email address: v.baginski@verizon.net. Thus, to the extent that a typographical error was made in Plaintiff's Reply Declaration, Plaintiff hereby corrects said typo with the short Declaration submitted herewith, explaining that in his Reply Declaration, he was in fact referring to the v.baginski@verizon.net email address.

1

## LEGAL ARGUMENT

**DEFENDANTS' SUR-REPLY BASED ON INAPPOSITE CASE LAW THAT ANALYZES LAW ENFORCEMENT'S QUALIFIED IMMUNITY IS IRRELEVANT AND SHOULLD BE DISREGARDED.**

Defendants claim that its hacking of Plaintiff's email account to violate Plaintiff's attorney-client privilege does not matter because of the way they hacked it. Defendants explain:

> To the extent that Baginski Declaration is meant to refer to the v.baginski account, Baginski's assertion that he never shared the password to that account with anyone is incorrect. As Mr. Neumetzger relates, even if he did not share that account's password with any individuals verbally or in writing, he did enter into the Outlook email client program licensed to the Borough that was installed on the desktop computer owned by the Borough located in Borough Hall and provided to Baginski for his use (Neumetzger Cert. ¶ 12). In doing so, the password for the "v.baginski[at]Verizon[dot]net" account was embedded into the Outlook software and no further password entry was required to obtain the "snapshot" of the emails to and from the "v.baginski[at]Verizon[dot]net" account in the manner described in paragraphs 7 and 8 of [Mr. Neumetzger's) earlier Certification" (Neumetzger Cert. ¶ 12).

[Defendants' sur-reply brief pages 1-2.]

The forgoing is cognitive dissonance. Explaining how they stole attorney-client communications from Plaintiff's personally password-protected email does not change the fact that Plaintiff did not give Defendants his password for what he believed to be a personal email account either verbally or in writing, as Defendants are forced to concede in the block quotation above.

2

Moreover, that Defendants discovered on a Google search that Plaintiff used his personal email address to email the Federal Communications Commission or the Council on Affordable Housing similarly does nothing to support Defendants' argument that their breach of the attorney-client privilege for personal litigation advantage does not matter.

Defendants do not stop there. Instead, they cite *Walker v. Coffey*, 905 F.3d 138 (3d Cir. 2018), a matter concerning whether Pennsylvania State law enforcement possessed qualified immunity where they used a defective subpoena to obtain emails from a Penn State employee's computer in investigating a crime. Id. at 141-42. Nowhere in *Walker* does the Third Circuit make any reference to the attorney-client privilege. Instead, the Third Circuit affirmed the Pennsylvania District Court's decision to dismiss the complaint on the basis of qualified immunity but allowed the plaintiff to amend her complaint to allege a violation of the federal Stored Communications Act. As such, *Walker v. Coffey* is wholly inapposite. Id. at 150-51.

Defendants miss the mark entirely and view this matter through a wholly incorrect lens. Shockingly, in doing do, Defendants continue to ignore, perhaps strategically because their actions cannot be defended, the one New Jersey Supreme Court case, *Stengart v. Loving Care Agency, Inc.,* 201 N.J. 300, 315 (2010), which is directly on point. Without reiterating the full *Stengart* analysis

3

yet again, it is clear that while employers may still regulate computer activity, **"employers have no need or basis to read the specific *contents* of personal, privileged, attorney-client communications in order to enforce corporate policy."** *Id.* at 325. (Emphasis added.) This renders ownership of the electronic data irrelevant. The New Jersey Supreme Court expanded its decision further holding that, although the defendant's company policy on computer usage was "not entirely clear[,]" **"[b]ecause of the important public policy concerns underlying the attorney-client privilege, even a more clearly written company manual—that is, a policy that banned all personal computer use and provided unambiguous notice that an employer could retrieve and read an employee's attorney-client communications, if accessed on a personal, password-protected e-mail account using the company's computer system — would not be enforceable."** *Id.* at 314, 325. (Emphasis added.)

The Court continued its analysis that: Stengart "had a reasonable expectation of privacy, where she plainly took steps to protect the privacy of those e-mails and shield them from her employer [like Mr. Baginski who understood at all relevant times that only he knew his password]." *Id.* at 321-322. The Court added that: "In light of the language of the [defendant's] Policy[] and the attorney-client nature of the communications, Stengart's expectation of privacy was also objectively reasonable.

4

Moreover, the e-mails are not illegal or inappropriate material stored on [the Defendant's] equipment, which might harm the company in some way." Id. at 322.

Thus, regardless of how Defendants obtained Plaintiff's personal password on what he believed to be his personal email address, the fact remains that Plaintiff's expectation of privacy with his attorney was entirely reasonable. Even if Defendants had stumbled upon Plaintiff's attorney-client communications, such communications should have been recognized as confidential and certainly not have been invoked to defend a civil lawsuit. This is not to mention the myriad of other sanctionable violations Defendants committed as set forth in the prior briefs including serious federal discovery violations and violations of the New Jersey Rules of Professional Conduct, all of which would now force us to re-depose all witnesses against the twelfth hour materials that Defendants finally admitted to producing in late 2020, past the discovery end date.

Finally, to the extent that Defendants have discovered a typographical error in Plaintiff's Reply Declaration, Defendant hereby corrects said typo by way of his Declaration submitted herewith, which sets forth what Defendants already know, that the email account at issue is v.baginski@verizon.net.

Defendants undoubtedly know this fact since that address is spattered all over the Bates-stamped documents that they produced

5

post-discovery and improperly obtained in breach of innumerable well-established legal standards, not least of all the attorney-client privilege.  These are the documents Bates-stamped BAGINSKI EMAILS 0001 to BAGINSKI EMAILS 000140.  Attorney Seaman even concedes as much in his August 17, 2020 correspondence annexed to the Undersigned's moving Declaration at Para. 4, "Exhibit C," and as confirmed by Mr. Baginski's own Declaration submitted herewith.

Thus, it is respectfully submitted that this Court should ignore Defendants' sur-reply, which cites one case that is completely inapposite to this matter where the facts of a New Jersey Supreme Court case are nearly a perfect fit for the matter at Bar.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Sanctions should be granted in its entirety.

                                        **LAW OFFICE OF ROBERT A. TANDY, LLC**
                                        Counsel for Plaintiff

                                        By: /s/ Robert A Tandy
                                               Robert A. Tandy, Esq.

Dated: March 18, 2021